**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 20-23185-CIV-GAYLES/OTAZO-REYES

FABRIZIO DELLA POLLA,

    Plaintiff,

v.

ALEXANDER PALENCIA,

    Defendant.
_____/

**REPORT AND RECOMMENDATION RE:**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT**

THIS CAUSE came before the Court upon Plaintiff Fabrizio Della Polla's ("Plaintiff" or "Mr. Della Polla") Motion for Summary Judgment (hereafter, "Plaintiff's Motion for Summary Judgment") [D.E. 105] and Defendant Alexander Palencia's ("Defendant" or "Mr. Palencia") Motion for Summary Judgment and Incorporated Memorandum of Law (hereafter, "Defendant's Motion for Summary Judgment") [D.E. 102] (together, "Cross-Motions for Summary Judgment").[1] These matters were referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Darrin P. Gayles, United States District Judge [D.E. 21]. The undersigned held a hearing on these matters on December 8, 2021 (hereafter, "Hearing") [D.E. 131]. For the reasons set forth below, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be DENIED; and that Defendant's Motion for Summary Judgment be GRANTED IN PART, only as to Plaintiff's claims for punitive damages; and that it be otherwise DENIED.

---

[1] Mr. Della Polla also filed unredacted versions of his Motion for Summary Judgment [D.E. 111, filed under seal] and his Statement of Material Facts [D.E. 112, filed under seal].

## BACKGROUND

Mr. Della Polla alleges that he and Mr. Palencia were once close friends and business colleagues. See Am. Compl. [D.E. 12 ¶ 1]. According to Mr. Della Polla, over the course of that relationship, his Venezuelan company, Servicio de Nutrición Animal, S.A. ("Servinaca"), and Mr. Palencia's Florida corporation, Divendi Americas, Inc. d/b/a Agromix ("Agromix"), engaged in extensive business transactions. Id. ¶¶ 1–3. Mr. Della Polla further alleges that, beginning in 2012, he and Mr. Palencia decided to expand their joint business dealings and apply their business acumen to a real estate investment. Id. ¶¶ 4–5. However, according to Mr. Della Polla, Mr. Palencia ultimately "defrauded [Mr. Della Polla] and breached his fiduciary duties" when he: appropriated funds that Mr. Della Polla had invested in their joint real estate venture (hereafter, "the Brooklyn Deal"); failed to honor his promise to Mr. Della Polla to make him a partner in the Brooklyn Deal; and withheld profit distributions from Mr. Della Polla. Id. ¶¶ 9–13. Pursuant to these allegations, Mr. Della Polla asserts claims against Mr. Palencia for: fraud (Count I); negligent misrepresentation (Count II); breach of fiduciary duty (Count III); unjust enrichment (Count IV); constructive trust (Count V); and equitable accounting (Count VI). Id. ¶¶ 116–56. As relief, Mr. Della Polla seeks: compensatory and punitive damages as to Counts I–III; compensatory damages as to Count IV; and equitable relief as to Counts V–VI. Id.[2]

Mr. Palencia has moved for summary judgment on all six counts in the Amended Complaint. See Defendant's Motion for Summary Judgment [D.E. 102]; see also Defendant's Statement of Material Facts [D.E. 103]. According to Mr. Palencia, Mr. Della Polla's entire case fails as a matter of law due to: the lack of an enforceable partnership agreement between the

---

[2] In this case, it is undisputed that Florida law applies to Mr. Della Polla's claims. See, e.g., Defendant's Motion for Summary Judgment [D.E. 102 at 3–5] (citing Florida case law); Plaintiff's Motion for Summary Judgment [D.E. 105 at 15–20] (same).

parties; Mr. Della Polla's failure to produce evidence that he invested in the Brooklyn Deal; and illegality. See Defendant's Motion for Summary Judgment [D.E. 102 at 11–16, 23–25]. Mr. Palencia further argues that he is entitled to summary judgment on all six claims in the Amended Complaint on the following grounds:

- ➢ Mr. Della Polla's claims for fraud and negligent misrepresentation fail because it is undisputed that Mr. Palencia did not make any false representations with respect to Mr. Della Polla's alleged stake in the Brooklyn Deal; and, in the alternative, these claims are barred by the independent tort doctrine. Id. at 17–20.
- ➢ Mr. Della Polla's claims for breach of fiduciary duty and unjust enrichment fail because Mr. Palencia did not owe Mr. Della Polla a fiduciary duty. Id. at 20–22.
- ➢ Mr. Della Polla's claim for a constructive trust is not a cognizable cause of action under Florida law; and Mr. Della Polla has failed to allege any basis for an equitable accounting. Id. at 22–23.
- ➢ There is no basis to award punitive damages as to Mr. Della Polla's claims for fraud, negligent misrepresentation, and breach of fiduciary duty. Id. at 25.

Mr. Della Polla has also moved for summary judgment on all six of his claims. See Plaintiff's Motion for Summary Judgment [D.E. 105]; see also Plaintiff's Statement of Material Facts [D.E. 106]. In support of his Motion for Summary Judgment, Mr. Della Polla argues that:

- ➢ Witness testimony and the parties' email correspondence conclusively establish that Mr. Della Polla and Mr. Palencia were business partners and that Mr. Della Polla invested in the Brooklyn Deal. See Plaintiff's Motion for Summary Judgment [D.E. 105 at 2–14].
- ➢ With regard to the unjust enrichment claim, "Mr. Palencia benefitted significantly from Mr. Della Polla's contribution and continues to hold assets that [Mr. Palencia] purchased

with the contribution". Id. at 16.

- ➢ Mr. Palencia abused Mr. Della Polla's trust and breached his fiduciary duty by "taking Mr. Della Polla's investment funds and then denying that the men had any partnership at all." Id. at 18.
- ➢ Mr. Palencia negligently misrepresented the nature of the parties' relationship and defrauded Mr. Della Polla. Id. at 19–20.

Mr. Della Polla thus argues that summary judgment in his favor on all six counts is warranted and that he is entitled to the relief he seeks. Id. at 18–19, 21.

On November 10, 2021, Plaintiff filed his Counter Statement of Material Facts (hereafter, "Plaintiff's Counterstatement") [D.E. 114] and Response in Opposition to Defendant's Motion for Summary Judgment (hereafter, "Plaintiff's Response") [D.E. 118]. On the same day, Defendant filed his Response in Opposition to Plaintiff's Motion for Summary Judgment (hereafter, "Defendant's Response") [D.E. 115] and Response to Plaintiff's Statement of Material Facts (hereafter, "Defendant's Counterstatement") [D.E. 117]. Thereafter, on November 17, 2021, Plaintiff filed his Reply in Support of his Motion for Summary Judgment (hereafter, "Plaintiff's Reply") [D.E. 122] and Defendant filed his Reply in Support of his Motion for Summary Judgment (hereafter, "Defendant's Reply") [D.E. 123].[3]

## APPLICABLE LAW

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure (hereafter "Rule 56(a)") "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict

---

[3] Mr. Della Polla also filed unredacted versions of his Response [D.E. 113, filed under seal] and his Reply [D.E. 121, filed under seal].

4

for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" Fonseca v. Wal-Mart Stores, E., LP, No. 18-CV-62768, 2019 WL 7371813, at *2 (S.D. Fla. Sept. 23, 2019) (quoting Anderson, 477 U.S. at 248). The movant must support his assertion that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

When determining whether a genuine issue of material fact exists, courts "view all evidence and draw all reasonable inferences in favor of the non-moving party." Smith v. Royal Caribbean Cruises, Ltd., 620 F. App'x 727, 729 (11th Cir. 2015). Courts "resolve factual controversies in favor of the nonmoving party [] only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

"The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion." Torres v. Rock & River Food Inc., 244 F. Supp. 3d 1320, 1327 (S.D. Fla. 2016) (citing Am. Bankers Ins. Grp. v. United States, 408 F.3d 1328, 1331 (11th Cir. 2005)). "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." Torres, 244 F. Supp. 3d at 1327 (internal quotation marks and citation omitted). "[A] court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration." Id. at 1327–28 (citing Am. Bankers Ins. Grp., 408 F.3d at 1331).

## **DEFENDANT'S GLOBAL ARGUMENTS IN FAVOR OF SUMMARY JUDGMENT**

As noted above, Mr. Palencia initially argues that Mr. Della Polla's entire case fails for three global reasons, which are: that the Statute of Frauds prevents Mr. Della Polla from enforcing his alleged partnership with Mr. Palencia; that Mr. Della Polla has failed to produce any evidence that he invested in the Brooklyn Deal; and that the investment funds to which Mr. Della Polla lays claim are the fruits of an "unlicensed money transmitting business," thereby barring this action on the basis of illegality.  See Defendant's Motion for Summary Judgment [D.E. 102 at 11–16, 23–25].

**A. Statute of Frauds**

Mr. Palencia first argues that the Statute of Frauds bars the enforcement of any alleged agreement between the parties, which "vitiates all [of Mr. Della Polla's] claims" because they are all "predicated" on its alleged existence.  See Defendant's Motion for Summary Judgment [D.E. 102 at 11–12].  "The [S]tatute of [F]rauds sets forth that 'no action shall be brought . . . upon any agreement that is not to be performed within the space of 1 year from the making thereof' and is not in writing."  Doe v. Roe, 500 F. Supp. 3d 1319, 1324 (S.D. Fla. 2020) (quoting Florida's Statute of Frauds, Fla. Stat. § 725.01).  With regard to the time frame for the Brooklyn Deal, one email cited by Mr. Della Polla, which was authored by Mr. Palencia, indicated that the Brooklyn Deal would be sold in "36 to 48 months" from the initial investment.  See Plaintiff's Statement of Material Facts [D.E. 106 ¶ 10].  This evidence supports an inference that the venture would not have been performed within one year.  Further, Mr. Della Polla does not dispute that the parties did not memorialize the Brooklyn Deal in a written agreement.  See Plaintiff's Counterstatement [D.E. 114 ¶ 1].  Therefore, the Brooklyn Deal is, at best, an oral agreement whose enforcement is barred by Florida's Statute of Frauds, Fla. Stat. § 725.01.

However, the Statute of Frauds will only operate to bar Mr. Della Polla's claims if they are "actions brought upon" the unenforceable agreement. See, e.g., Sader v. Padron, No. 18-cv-22891, 2018 WL 7287159, at *4 (S.D. Fla. Dec. 19, 2018) (Ungaro, J.) ("[I]f Plaintiff['s] breach of fiduciary duty and unjust enrichment claims are 'actions brought upon' an oral agreement, they would be barred by the [S]tatute of [F]rauds."). Indeed, a plaintiff "cannot circumvent the bar imposed by the [S]tatute of [F]rauds 'merely by claiming that an oral agreement was actually a fraudulently made promise to perform.'" Doe, 500 F. Supp. at 1325 (citations omitted).

Here, Mr. Della Polla's claims do not attempt to enforce a contract between himself and Mr. Palencia. Rather, with respect to his counts for fraud and negligent misrepresentation, Mr. Della Polla seeks relief based on Mr. Palencia's alleged misrepresentations about how and to what extent he used Mr. Della Polla's purported investment to fund the Brooklyn Deal. See Am. Compl. [D.E. 12 ¶¶ 116–27]; see also Agudelo v. Padron, No. 18-22612-Civ, 2019 WL 1331900, at *3 (S.D. Fla. Mar. 25, 2019) ("[T]he fraud count is not barred by the [S]tatute of [F]rauds because it does not attempt to enforce a contract.") (citing Attanasio v. Excel Dev. Corp., 757 So. 2d 1253, 1256 (Fla. 4th DCA 2000)). Mr. Della Polla's claim for breach of fiduciary duty is also "not predicated on the enforcement of the [parties'] agreement[]", see Sader, 2018 WL 7287159, at *5, but rather seeks to remedy what Mr. Della Polla characterizes as a breach of the trust he reposed in Mr. Palencia as a financial and investment advisor. See Am. Compl. [D.E. 12 ¶¶ 128–35]; see also Sader, 2018 WL 7287159, at *5 ("[The] complaint makes clear that his breach of fiduciary duty claim seeks relief arising out of Padron's violation of their personal and business relationship and Padron's failure to act in Bejarano's 'best interest.'"). The same is true of Mr. Della Polla's claim for unjust enrichment wherein he alleges that it would be "inequitable to allow Mr. Palencia to maintain the benefit [Mr. Della Polla conferred] without paying [Mr. Della Polla] the value of

his investment." See Am. Compl. [D.E. 12 ¶¶ 136–45]; see also Sader, 2018 WL 7287159, at *5 ("Bejarano's unjust enrichment claims are not predicated on the enforcement of the oral agreements, rather they allege that Padron unjustly enriched himself at Bejarano's expense by . . . misinforming Bejarano as to the purpose of the funds he transferred, inducing Bejarano to transfer the funds, and keeping the funds for himself."). Finally, under Florida law, the Statute of Frauds does not operate to bar Mr. Della Polla's equitable claims for a constructive trust and an accounting. See Kolski ex rel. Kolski v. Kolski, 731 So. 2d 169, 172 (Fla. 3d DCA 1999) ("As to counts I and III for unjust enrichment/restitution and the imposition of a constructive trust respectively, we agree that the [S]tatute of [F]rauds is simply inapplicable to such claims."); see also Butler v. Wright, No. 8:06–CV–165–T–17MAP, 2009 WL 10670061, at *4 (M.D. Fla. Mar. 4, 2009) ("The Court further notes that the [S]tatute of [F]rauds does not bar Plaintiff Butler's claims for equitable relief.") (citations omitted).

Accordingly, the Statute of Frauds does not "vitiate[] all [of Mr. Della Polla's] claims[,]" see Defendant's Motion for Summary Judgment [D.E. 102 at 11–12], and Mr. Palencia is not entitled to summary judgment pursuant to the Statute of Frauds.

### B. Proof of Investment

Next, Mr. Palencia argues that Mr. Della Polla has failed to produce evidence that he invested in the Brooklyn Deal, which Mr. Palencia contends is fatal to all of Mr. Della Polla's claims. See Defendant's Motion for Summary Judgment [D.E. 102 at 13]. Mr. Palencia argues that Mr. Della Polla neither invested directly in the Brooklyn Deal nor indirectly by way of a majority ownership interest in Agromix. Id. at 13–14. Thus, Mr. Palencia contends that Mr. Della Polla cannot: "show the harm or actual detrimental reliance necessary to sustain his fraud and negligent misrepresentation claims[;] . . . establish that he conferred a benefit on Mr. Palencia, that

8

Mr. Palencia voluntarily accepted and retained that benefit, or that circumstances are such that it would be inequitable for Mr. Palencia to retain a nonexistent benefit[;] . . . [or establish a basis] to impose any sort of constructive trust [], much less perform an equitable accounting [], over Plaintiff's non-existent investment." Id. at 15–16.

In response, Mr. Della Polla argues that ample evidence supports his contention that he invested in the Brooklyn Deal. This evidence includes a ledger of transactions related to Agromix (hereafter, "Agromix Ledger") [D.E. 12-3]. The ledger tracks activity in Agromix's Bank of America account (hereafter, "Agromix Account") beginning on August 18, 2011, and discloses several transactions that appear to have been made on behalf of either Mr. Della Polla or Mr. Palencia. See generally id. Specifically, the Agromix Ledger attributes some personal transactions to Mr. Della Polla, including withdrawals of sums for investment purposes, personal purchases, and debt repayments. See, e.g., id. at 2–3. According to Mr. Della Polla, the following entries in the Agromix Ledger reflect, in part, the parties' purported investment in the Brooklyn Deal:

- 5/1/12: $5,000 for the "Sandor Krauss Legal Retainer / Brooklyn Deal"
- 5/15/12: $375,000 for the "Brooklyn Deal 420-430 Carroll Street (Gowanus)"
- 5/24/12: $80,000 for the "Carroll Street Holdings LLC (Rezoning Deposit)"
- 6/13/12: $5,025 for the "Sandor Krauss Legal Retainer / Brooklyn Deal"
- 6/13/12: $21,000 for "Brooklyn Advisory Services"
- 6/13/12: $1,117.20 for "Brooklyn Travel Expenses"
- 6/29/12: $410,000 for the "Brooklyn Deal Nevins Street Down Payment"
- 7/10/12: $200,000 for the "Brooklyn Deal 420-430 Carroll Street (Gowanus)"

See Plaintiff's Statement of Material Facts [D.E. 106 ¶ 11]. Mr. Palencia disputes that the Agromix Ledger "evidences any funds contributed by Plaintiff towards the Brooklyn [Deal]." See Defendant's Counterstatement [D.E. 117 ¶ 11].

However, viewing the entries in the Agromix Ledger in the light most favorable to Mr. Della Polla, issues of fact do exist as to whether Mr. Della Polla's money was in the Agromix Account and to what extent such money was used to fund the investment in the Brooklyn Deal.

9

For example, certain transactions in the Agromix Ledger are annotated with the initials "FDP" or "AP", which gives rise to the inference that these initials correspond to Mr. Della Polla and Mr. Palencia, respectively. See Agromix Ledger [D.E. 12-3 at 2–6]. Though it is unclear whether the notation "FDP" signifies that a specific transaction was made by Mr. Della Polla himself or by Mr. Palencia on Mr. Della Polla's behalf, the notations support the additional inference that money was flowing in and out of the account for Mr. Della Polla's benefit.

Mr. Della Polla further argues that, when questioned about the Agromix Ledger during his deposition, Mr. Palencia invoked his Fifth Amendment right against self-incrimination, thereby leaving "unrebutted Mr. Della Polla's abundant evidence of contribution to the partnership" and entitling him to "a presumption that he contributed to the partnership as the [Agromix Ledger] describes." See Plaintiff's Response [D.E. 118 at 16]. Indeed, "[a]n adverse inference based on Defendant's decision not to answer questions put to him at his deposition is permissible." Hamilton Grp. Funding, Inc. v. Basel, 311 F. Supp. 3d 1307, 1316 (S.D. Fla. 2018). Thus, for purposes of summary judgment only, the undersigned will allow this presumption, though "the Court is not permitted and will not rest any findings against Defendant on the fact of his assertion of his privilege alone." Id.

Based on the foregoing, and viewing all evidence and drawing all reasonable inferences in favor of Mr. Della Polla, the undersigned concludes that Mr. Palencia is not entitled to summary judgment on the grounds that there is no evidence that Mr. Della Polla invested in the Brooklyn Deal.

### C. Illegality

Finally, Mr. Palencia argues that Mr. Della Polla seeks to enforce an alleged oral agreement to split profits that derive from an "illegal 'unlicensed money transmitting business wherein

Venezuelan bolivars were exchanged for U.S. dollars . . . on the black market currency exchange.'" See Defendant's Motion for Summary Judgment [D.E. 102 at 24] (alteration in original); Defendant's Reply [D.E. 123 at 14] (invoking equitable defense of unclean hands). Mr. Palencia contends that: in 2017, as part of a civil case in the United States District Court for the Eastern District of Missouri, Mr. Della Polla "reached a settlement with the United States to forfeit certain assets he admitted acquiring with the proceeds of that illegal scheme." See Defendant's Statement of Material Facts [D.E. 103 ¶ 23]. Mr. Palencia further contends that the funds Mr. Della Polla allegedly invested in the Brooklyn Deal by way of Agromix "have the same illicit origin as the funds used to purchase the assets Plaintiff forfeited to the [g]overnment." Id. ¶ 24. Thus, Mr. Palencia argues that Mr. Della Polla's claims are barred by illegality. See Defendant's Motion for Summary Judgment [D.E. 102 at 25].

Conversely, Mr. Della Polla contends that "there is no evidence that [he] or Servinaca (or any of Mr. Della Polla's joint businesses with Mr. Palencia) were involved in any criminal activity." See Plaintiff's Counterstatement [D.E. 114 ¶ 24]. Rather, according to Mr. Della Polla, the United States has clarified that "no criminal action is currently pending against [Mr.] Della Polla in the Eastern District of Missouri." Id. (citing Notification of Clarification of Verified Complaint [D.E. 114-1]).

Notwithstanding the factual issues raised in connection with this argument, the undersigned need not consider Mr. Palencia's defense of illegality in the context of summary judgment, given the foregoing conclusion that the Brooklyn Deal is, at best, an oral agreement whose enforcement is barred by Florida's Statute of Frauds. See, e.g., Roberts v. Stutman, No. 09-80490-CIV, 2011 WL 13225074, at *6 (S.D. Fla. Jan. 19, 2011) ("Having concluded that Florida's Statute of Frauds bars the agreement in question, the Court need not determine whether the alleged oral agreement

had a lawful purpose."). However, as discussed above, the unenforceability of the parties' agreement does not necessarily foreclose Mr. Della Polla's claims. Agudelo, 2019 WL 1331900, at *3; Sader, 2018 WL 7287159, at *5.

### THE PARTIES' CROSS-MOTIONS ON PLAINTIFF'S SIX CLAIMS

As noted above, both parties seek summary judgment in their favor on each of the six counts in the Amended Complaint. The undersigned discusses below the parties' counterarguments as to: Counts I and II; Counts III and IV; and Counts V and VI. The undersigned concludes that neither party is entitled to judgment as a matter of law on these claims.

**A. Fraud (Count I) and negligent misrepresentation (Count II)**

"Under Florida law, the essential elements of a cause of action for fraud are: (1) a false statement of fact; (2) known by the defendant to be false at the time it was made; (3) made for the purpose of inducing the plaintiff to act in reliance thereon; (4) action by the plaintiff in reliance on the correctness of the representation; and (5) resulting damage or injury." Pitts Sales, Inc. v. King World Prods., Inc., 383 F. Supp. 2d 1354, 1362–63 (S.D. Fla. 2005) (citations omitted). "[The] plaintiff's reliance on the representation must be reasonable." Id. at 1363 (citation omitted). Similarly, "a claim for negligent misrepresentation requires (1) a misrepresentation of material fact; (2) a representer who either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) a representer who intended to induce another to act on the misrepresentation; and (4) an injury that resulted to a party acting in justifiable reliance upon the misrepresentation." F.D.I.C. v. Floridian Title Grp. Inc., 972 F. Supp. 2d 1289, 1297 (S.D. Fla. 2013) (citation omitted) (applying Florida law).

As to the element of misrepresentation, Mr. Della Polla contends that Mr. Palencia made

12

several misrepresentations to him about the Brooklyn Deal. Mr. Della Polla states that on April 21, 2012, Mr. Palencia wrote to Mr. Della Polla about the Brooklyn Deal, explaining that the venture would require the following: "[b]ank finances, 4.5 million dollars. We come up with 4.4 million dollars. [Other] members put 1.1 million dollars. . . . This is a big deal buddy." See Plaintiff's Statement of Material Facts [D.E. 106 ¶ 10]. Further, Mr. Della Polla states that on May 22, 2012, Mr. Palencia "confirmed the partnership in an email to Mr. Della Polla" in which he introduced Mr. Della Polla to other "members, partners in the Brooklyn [Deal]." Id. ¶ 15. Mr. Della Polla references several other emails for the proposition that Mr. Palencia represented that the parties were undertaking the project together. Id. ¶¶ 15, 17, 19–20, 27–28, 36. Conversely, Mr. Palencia disputes that the emails referenced by Mr. Della Polla "explain[] that 'the men would invest jointly' or evidence[] that Plaintiff held any interest in the Brooklyn [Deal]". See Defendant's Counterstatement [D.E. 117 ¶ 10]. Further, Mr. Palencia disputes that the emails confirm or describe the terms of any partnership between himself and Mr. Della Polla. Id. ¶¶ 15, 17, 19–20, 27–28, 36. Thus, a genuine issue of material fact exists as to whether Mr. Palencia made any false statements of fact or misrepresentations to Mr. Della Polla about the Brooklyn Deal.

As to the element of reliance, in addition to the transactions memorialized in the Agromix Ledger, Mr. Della Polla references: a schedule of initial capital contributions from the parties' purported joint investment vehicle, Gowanus Investment Group, that match several of the transactions in the Agromix Ledger; and an email from Mr. Palencia to Mr. Della Polla containing financial details about a property in the Brooklyn Deal and attributing $2,139,390.72 of net cash flow from its alleged sale to Mr. Della Polla. See Plaintiff's Statement of Material Facts [D.E. 106 ¶¶ 33, 37] (citing Ex. 8 to Deposition of Ronald Kriss (hereafter, "Kriss Deposition") [D.E. 105-7

13

at 379]; Ex. 63 to Deposition of Alexander Palencia (hereafter, "Palencia Deposition") [D.E. 111-5 at 865, filed under seal]). However, Mr. Palencia disputes that these documents reflect "any *actual* capital contribution by, or ownership interest of, Plaintiff in any of the Brooklyn properties" or attribute any net cash flow to Mr. Della Polla. See Defendant's Counterstatement [D.E. 117 ¶¶ 33, 37] (emphasis in original). Moreover, with regards to the Agromix Ledger, Mr. Palencia proffers that: Mr. Della Polla has never been a shareholder or corporate officer of Agromix; Mr. Della Polla has never been an authorized signatory or had any control or authority over the Agromix Account; and although Mr. Della Polla was invited to invest in the Brooklyn Deal, he never contributed funds from a bank account he owned or controlled to the Brooklyn Deal. See Defendant's Statement of Material Facts [D.E. 103 ¶¶ 6, 9, 12] (citing Deposition of Fabrizio Della Polla (hereafter, "Della Polla Deposition") [D.E. 103-1 at 74:7–14; 76:5–10; 98:13–100:2; 104:18–20]; Palencia Deposition [D.E. 103-3 at 13:18–14:16; 188:13–15, 23–25; 205:25–206:7; 214:16–215:1; 217:20–25]; Declaration of Alexander Palencia (hereafter, "Palencia Declaration") [D.E. 103-4 ¶¶ 7, 10–11]). Thus, a genuine issue of material fact also exists as to whether Mr. Della Polla acted in reliance on any of Mr. Palencia's alleged misrepresentations and invested in the Brooklyn Deal, by way of Agromix or otherwise.

Finally, Mr. Palencia contends that Mr. Della Polla's fraud-based claims are barred by the independent tort doctrine because they "seek recovery in tort for Mr. Palencia's alleged breach of the non-existent partnership agreement." See Defendant's Motion for Summary Judgment [D.E. 102 at 19]. However, although these claims "are *related to* [the parties' unenforceable] oral agreement[], they are not merely repackaged breach of contract claims, but are instead independent torts arising out of [Mr. Palencia's alleged] misconduct." Sader, 2018 WL 7287159, at *5 (emphasis in original); see also Plaintiff's Response [D.E. 118 at 19] (contesting the application

of the independent tort doctrine).

Thus, neither party is entitled to summary judgment on Mr. Della Polla's claims for fraud (Count I) and negligent misrepresentation (Count II).

### B. Breach of fiduciary duty (Count III) and unjust enrichment (Count IV)

"The elements of a claim for breach of fiduciary duty are (1) existence of a fiduciary duty, (2) breach of that duty, and (3) damages proximately caused by that breach." Floridian Title, 972 F. Supp. 2d at 1296–97. Under Florida law, "the rule embraces both technical fiduciary relations and those informal relations which exist wherever one man trusts in and relies upon another." Quinn v. Phipps, 93 Fla. 805, 809–10 (1927). Further, under Florida law, "[a] claim for unjust enrichment has three elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." Virgilio v. Ryland Grp., Inc., 680 F.3d 1329, 1337 (11th Cir. 2012); see also Carriuolo v. General Motors LLC, 72 F. Supp. 3d 1323, 1326 (S.D. Fla. 2014) (same).

As to the claim for breach of fiduciary duty, Mr. Palencia contends that he does not owe Mr. Della Polla such a duty for the following reasons: he does not hold professional licenses; he is not a financial or investment advisor and does not hold himself out as one; he does not manage funds for others; he does not advise others in connection with financial investments; he does not receive payment for providing investment advice; he has never worked at a financial investment or advisory firm; and he has never charged a fee for providing investment advice. See Defendant's Statement of Material Facts [D.E. 103 ¶ 15] (citing Palencia Deposition [D.E. 103-3 at 191:23–192:22]). Thus, Mr. Palencia proffers that he did not provide financial or investment advice to Mr. Della Polla in exchange for a fee, and that as a result, a fiduciary duty does not exist between

15

himself and Mr. Della Polla. Id. ¶ 16 (citing Palencia Deposition [D.E. 103-3 at 191:23–192:22; 193:12–17]). However, Mr. Della Polla disputes that Mr. Palencia's orchestration of the Brooklyn Deal did not give rise to a fiduciary duty and offers evidence of his reliance on Mr. Palencia for financial advice by proffering that "Mr. Palencia repeatedly told Mr. Della Polla that Mr. Palencia was an expert in financial affairs, that he would provide financial advice to Mr. Della Polla, [and] that he would handle all day to day financial affairs for their joint companies and the Brooklyn Deal", which involved communicating with "lawyers and other professionals to make sure the joint investment was documented and managed appropriately." See Plaintiff's Counterstatement [D.E. 114 ¶ 15] (citations omitted). Mr. Della Polla further proffers that he "trusted Mr. Palencia to structure and document the men's joint investment in the Brooklyn Deal." Id. ¶ 16 (citations omitted). Thus, a genuine issue of material fact exists as to whether Mr. Palencia owed Mr. Della Polla a fiduciary duty under Florida law.

As to the claim for unjust enrichment, Mr. Della Polla argues that "Mr. Palencia [has] benefitted significantly . . . and continues to hold [real estate] assets that he purchased with" Mr. Della Polla's alleged contribution. See Plaintiff's Motion for Summary Judgment [D.E. 105 at 15–16]. However, Mr. Palencia denies that Mr. Della Polla directly invested in the Brooklyn Deal such that Mr. Palencia has been unjustly enriched by his investment. See Defendant's Response [D.E. 115 at 14–15]. However, given the existence of factual issues surrounding Mr. Della Polla's investment in the Brooklyn Deal, as discussed above, these arguments do not support a ruling as a matter of law on the unjust enrichment claim.

Accordingly, neither party is entitled to summary judgment on Mr. Della Polla's claims for breach of fiduciary duty (Count III) and unjust enrichment (Count IV).

### C. Constructive trust (Count V) and equitable accounting (Count VI)

Under Florida law, "[t]he four elements required to establish a constructive trust include: (1) a promise, express or implied, (2) a transfer of property and reliance thereon, (3) a confidential relationship, and (4) unjust enrichment." See Pharma Funding, LLC v. FLTX Holdings, LLC, 20-21103-Civ, 2021 WL 1166051, at *9 (S.D. Fla. Mar. 8, 2021), report and recommendation adopted, 2021 WL 1165420 (S.D. Fla. Mar. 26, 2021) (citation omitted). "Ultimately, a constructive trust is a remedial device with the dual objectives of restoring property to its rightful owner and preventing unjust enrichment." Id. This sort of equitable relief "is only available where there is no adequate remedy at law[.]" Id. (internal quotation marks omitted and alteration in original) (citing Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc., 14 F.3d 1507, 1518 (11th Cir. 1994)). Moreover, "[u]nder Florida law, a party that seeks an equitable accounting must show that: 1) the parties share a fiduciary relationship or that the questioned transactions are complex, and 2) a remedy at law is inadequate." MCZ/Centrum Flamingo II, LLC v. City of Miami Beach, No. 08-22419-CIV, 2009 WL 10700924, at *2 (S.D. Fla. May 6, 2009) (internal quotation marks omitted) (citing Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1071 (11th Cir. 2007)).

Mr. Palencia argues that Florida law does not "recognize a cause of action for constructive trust" when it is asserted as a "stand-alone cause of action, unconnected to the other counts." See Defendant's Motion for Summary Judgment [D.E. 102 at 22]. Mr. Palencia further contends that "[n]o basis exists to award such [an] extraordinary equitable remedy here, where it is undisputed that [Mr. Della Polla] failed to contribute any funds for the Court to hold a constructive trust over." See Defendant's Reply [D.E. 123 at 13]. However, Mr. Della Polla's count for a constructive trust mirrors the language pled in his count for unjust enrichment, and expressly references the alleged inequity of allowing Mr. Palencia to retain the benefit that Mr. Della Polla claims he conferred by

17

way of his investment. Compare Am. Compl. [D.E. 12 ¶¶ 136–45] with id. ¶¶ 146–51. Moreover, as discussed above, issues of fact remain as to whether Mr. Della Polla contributed funds to the Brooklyn Deal. Therefore, Mr. Della Polla's claim for a constructive trust is not subject to judgment as a matter of law.[4]

As to Mr. Della Polla's claim for an equitable accounting, as discussed above, issues of fact exist as to whether Mr. Palencia owed Mr. Della Polla a fiduciary duty such that Mr. Della Polla would be entitled to an equitable accounting on that basis, irrespective of whether the parties' joint business dealings were so complicated as to otherwise justify an accounting. See, e.g., Sader v. Padron, No. 18-22891-CIV, 2019 WL 6210860, at *5 (S.D. Fla. Nov. 21, 2019) (Smith, J.) ("Because Plaintiff's claims for breach of fiduciary duty survive summary judgment, Plaintiff's claim for an accounting also survives."). Given these factual issues, Mr. Della Polla's claim for an equitable accounting is not subject to judgment as a matter of law.

### D. Punitive damages

Finally, Mr. Palencia argues that Mr. Della Polla has failed to substantiate his assertion that Mr. Palencia engaged in "the type of intentional misconduct or recklessness necessary to support punitive damages" and seeks summary judgment as to Mr. Della Polla's punitive damages request. See Defendant's Motion for Summary Judgment [D.E. 102 at 25]; see also Defendant's Reply [D.E. 123 at 14]. In his response, Mr. Della Polla failed to properly address this argument, notwithstanding that it was his "responsibility to respond and 'go beyond the pleadings and by [his] own affidavits or by the depositions, answers to interrogatories, and admissions on file designate specific facts showing that there is a genuine issue for trial.'" See Mardegan v. Mylan,

---

[4] See Padron Warehouse Corp. v. Realty Assocs. Fund III, L.P., 377 F. Supp. 2d 1259, 1275–76 (S.D. Fla. 2005) (acknowledging that one Florida court has held that a constructive trust is an independent claim with substantive elements, while another Florida court has determined it to be an extraordinary, equitable remedy based on an established cause of action).

Inc., No. 10-14285-CIV, 2012 WL 12850781, at *10 (S.D. Fla. Jan. 31, 2012) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Therefore, Mr. Palencia is entitled to summary judgment as to Mr. Della Polla's requests for punitive damages. See Mardegan, 2012 WL 12850781, at *10.

## CONCLUSION

Based on the foregoing considerations, the undersigned RESPECTFULLY RECOMMENDS that Plaintiff's Motion for Summary Judgment [D.E. 105; D.E. 111, filed under seal] be DENIED; and that Defendant's Motion for Summary Judgment [D.E. 102] be GRANTED IN PART, only as to Plaintiff's claims for punitive damages; and that it be otherwise DENIED.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have **fourteen days** from the date of this Report and Recommendation to file written objections, if any, with the Honorable Darrin P. Gayles, United States District Judge. Failure to file timely objections may bar the parties from attacking the factual findings contained herein on appeal. See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993). Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Chambers at Miami, Florida this 21st day of April, 2022.

_____
ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE

cc:  United States District Judge Darrin P. Gayles
     Counsel of Record